Filed 2/1/21 (unmodified opinion attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| NICOLE NAGEL ET AL., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> TRACY A. WESTEN ET AL., <br><br> Defendants and Respondents. | 2d Civil No. B300552 <br> (Super. Ct. No. 15CV01178) <br> (Santa Barbara County) <br><br> ORDER DENYING PETITION <br> FOR REHEARING AND <br> MODIFYING OPINION <br> (No Change in Judgment) |

THE COURT:

It is ordered that the opinion filed herein on January 7, 2021, be modified as set forth below:

1. On page 1, the second sentence in the first paragraph is modified to read as follows:  They sold it to appellants Nicole Nagel and "ESY Investments" (Nagel) in 2011 for $4.12 million.

2. On page 1 and 2, the second sentence in the second paragraph is modified to read as follows:  It awarded Nagel over $4.5 million for the loss of the home, which it held added no value to the land on which it stands.

3.  On page 2, the second sentence in the first full paragraph is modified to read as follows:  By the time ensuing and relatively fruitless efforts at collection were undertaken, Sellers had allegedly sent the bulk of their assets out of California including applying the proceeds of the sale to an expensive home in Texas to take advantage of that state's unlimited homestead exemption; and, with aid and counsel of Tracy Westen's siblings, placing additional assets in a variety of funds, annuities and investments in Nevada and Minnesota.

No change in judgment.
Appellants' petition for rehearing is denied.

GILBERT, P.J.            YEGAN, J.            PERREN, J.

2

Filed 1/7/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| NICOLE NAGEL et al., | 2d Civil No. B300552 |
| Plaintiffs and Appellants, | (Super. Ct. No. 15CV01178) |
| | (Santa Barbara County) |
| v. | |
| TRACY A. WESTEN et al., | |
| Defendants and Respondents. | |

In the early 1990's, Tracy Westen and Linda Lawson (Sellers) built and lived in an architecturally significant home in the Brentwood area of West Los Angeles. They sold it to appellants Nicole Nagel and "ESY Investments" (Nagel) in 2011 for $2.2 million. Shortly after the sale Nagel learned that over the 19 years Sellers owned the home it had suffered extensive water intrusion, that Sellers knew this and that the home was uninhabitable despite Nagel's best efforts to repair and to save it. Nagel sued.

In the ensuing arbitration, the arbitrator found that Sellers had failed to disclose material facts regarding the water damage, that the house was worthless and its only value was the land. It

awarded Nagel over $4.5 million for the loss of the home, the futile efforts to repair it, plus attorney fees and costs.  This, however, was just the beginning, not the end of the litigation.

As the arbitration was winding down, the likely result became clear to Sellers.  By the time ensuing and relatively fruitless efforts at collection were undertaken, Sellers had sent the bulk of their assets out of California including applying the proceeds of the sale to an expensive home in Texas to take advantage of that state's unlimited homestead exemption; and, with aid and counsel of Tracy Westen's siblings, masking additional assets in a variety of funds, annuities and investments in Nevada and Minnesota.

This appeal is from a subsequent lawsuit filed by Nagel to unwind these transfers under the Uniform Voidable Transactions Act (UVTA).  (Civil Code, § 3439 et seq.)[1]  The action was dismissed, however, because Nagel could not identify a "third-party transferee" who received Westen and Lawson's assets; or as respondents describe it, "a meritless attempt to raid deeper pockets."  The Court reasoned that no transfer had occurred when Westen and Lawson simply converted their assets from non-exempt to exempt but did not relinquish ownership or control.

The order dismissing the case is reversed in part and affirmed in part.  We reverse the order to the extent it dismissed plaintiffs' causes of action for statutory fraudulent transfer and the companion claims for conspiracy and aiding and abetting.  We

---

[1] Unlabeled statutory references in this opinion are to the Civil Code.

2

affirm the order's dismissing of plaintiff's common law cause of action for fraudulent transfer.

FACTUAL AND PROCEDURAL BACKGROUND

Nagel bought the Brentwood house of Westen and Lawson in 2011. Westen and Lawson had commissioned Los Angeles-based Eric Owen Moss, a renowned avant-garde architect, to design the structure in the early 1990s. It served as the couple's primary residence until the sale.

Nagel later discovered pervasive mold and structural damage caused by long term water intrusion. An arbitrator awarded her over $4.5 million for repairs, attorney's fees, costs, and interest. The Los Angeles Superior Court confirmed the award and entered judgment against Westen and Lawson.[2]

In the instant matter, Nagel alleges Lawson and Westen enlisted Westen's brothers, attorneys Derek and Peter Westen, to help them design and implement an "Asset Protection plan" when it became apparent the arbitrator would rule in Nagel's favor. The plan had three components. First, they converted respondent Westen Family Group, LLC ("WFG"), of which Lawson and Westen held a 20.7 percent membership interest, from a California LLC into a Nevada LLC. Second, they placed a portion of the Brentwood sale proceeds into an annuity. Third, they bought a house in Texas and improved it with the balance of their sale proceeds. Nagel further alleges Lawson and Westen promptly moved to Texas upon receiving the arbitrator's preliminary award so they could invoke the state's unlimited

---

[2] *Nicole Nagel et al v. Tracy A. Westen et al.* (Super. Ct. Los Angeles County, 2013, No. SS023693).

homestead exemption to shield the new house and annuity from creditors.

Nagel filed this action when she learned about these asset protection measures. She named Lawson and Westen as defendants along with Derek Westen, Peter Westen, WFG, and two Westen family trusts. Her first amended complaint included three causes of action at issue here: (1) to set aside fraudulent transfer of assets under both the UVTA[3] and common law (as to WFG only); (2) civil conspiracy (as to all parties); and (3) aiding and abetting (as to Derek Westen, Peter Westen, WFG, and the family trusts).[4] Nagel sought to annul the transfers and to restrain Lawson and Westen from disposing of their assets, among other remedies.

Nearly four years of pleading challenges, discovery disputes, and law and motion proceedings followed. Nagel supplemented her complaint with allegations about post-filing conduct, including Lawson's and Westen's petitioning for bankruptcy in Texas.[5] A sojourn to Minnesota courts yielded

_____

[3] Nagel pleaded her claim under the UVTA's former title, the "Uniform Fraudulent Transfers Act" or "UFTA." The Legislature retitled the UFTA as the UVTA effective January 1, 2016. We use the current title throughout this opinion.

[4] Nagel dismissed her fourth cause of action for imposition of constructive trust.

[5] We granted the request of respondents WFG, Derek Westen, Peter Westen, and both Westen trusts for judicial notice of Lawson's and Westen's order of discharge in bankruptcy, among other materials. (*In re Tracy A. Westen and Linda Lawson*, No. 17-40030 (E.D.Tex. Jan. 3, 2017.) We take judicial notice on our own motion of the bankruptcy court's order dated

4

partial satisfaction of the arbitration award when Nagel collected the proceeds of the couple's annuity. She also obtained a charge order directing WFG to direct the couple's share of membership proceeds to her. This brought the Texas house purchase to center stage as trial approached.

The trial court received 42 motions in limine and competing versions of nearly all pre-trial filings, including witness lists, verdict forms, and jury instructions. It heard argument in the course of conducting nine pre-trial conferences over a two month period. The instructions for Nagel's first cause of action for fraudulent transfer, particularly CACI 4200, "Actual Intent to Hinder, Delay, or Defraud a Creditor," were hotly contested.

Nagel proposed modifying CACI 4200 to include not just third-party transfers but any transaction intended to evade creditors. Defining "transfer" more broadly, she argued, was "entirely harmonious with the premise of fraudulent transfer theory under California common law and as reflected in its statutory embodiment." WFG and Derek Westen proposed CACI 4200 in its standard configuration. Their version instructed the jury to decide whether Lawson and Tracy Westen "transferred the property [to WFG] with the intent to hinder, delay, or defraud one or more of their creditors." They argued Nagel could not maintain a cause of action for fraudulent transfer without identifying a third party transferee who received their assets. Defining internal asset shifts like a house purchase for one's self as actionable transfers, they contended, strayed far beyond the UVTA and what little case law informed the issue. The court

September 18, 2017 granting Nagel's motion for relief from automatic stay to continue the case giving rise to this appeal.

5

invited the parties to offer modifications to CACI 4200 and other 4200-series instructions to better reflect the current state of law.

Shortly after this pre-trial conference, Nagel sought to amend her first amended complaint by adding Lawson and Westen as defendants to her first cause of action for fraudulent transfer. She described the amendment as correcting a "labeling oversight." The couple would suffer no prejudice, she reasoned, because her prior pleading clearly described their role in the scheme. In opposition, Lawson and Westen described the proposed amendment as a belated about-face with a profound conceptual flaw – the couple would need to wear the hats of both "transferor" and "transferee" of their own assets at trial.

At the final pre-trial conference, the trial court said it had not yet decided the third-party transferee issue. The court told the parties it would consider supplemental briefing and directed them to return a week later prepared to select a jury. The parties promptly submitted briefs reiterating their positions.

The court issued a tentative ruling the day before trial denying leave to amend. It found Nagel could not maintain a cause of action under the UVTA against Lawson and Westen without identifying a third party transferee who benefitted from the debtor's transfer. While their establishing a Texas homestead affected Nagel's ability to enforce her judgment, the court reasoned, the purchase did not convey assets to a third party or otherwise alter the couple's rights with respect to their property. It refrained from deciding whether a common law cause of action existed because Nagel could not articulate its elements or explain how to instruct the jury on such a claim.

The parties appeared for trial the next day. Nagel's counsel explained how the court's tentative ruling would eliminate a

6

critical component of his client's case and leave little incentive to proceed with trial if adopted. He requested a stay to seek writ relief of the third-party transferee issue as a matter of first impression in California. The court expressed concern that writ review would result in a "postcard" denial and leave the case in the same position four or five weeks later. Defendants shared this concern. After a brief recess, WFG and Derek Westen moved to dismiss on the grounds they, like Lawson and Westen, could not face liability under the UVTA in the absence of an actionable transfer. Peter Westen joined the motion. The court granted it as both a common law motion for judgment on the pleadings and a dispositive motion in limine. In addition, it granted a separate motion in limine filed by Lawson and Westen to preclude all evidence relating to Nagel's first cause of action for fraudulent transfer.

The clerk entered an order dismissing the entire action on July 9, 2019. Nagel appealed.

## DISCUSSION

### A. Standard of Review

We review the first amended complaint de novo, assuming the truth of all factual allegations, "'to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We review the trial court's rulings on the pre-trial motions for abuse of discretion. (*Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1339; *Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1493.)

### B. The Uniform Voidable Transactions Act

The UVTA is a contemporary retooling of the common law remedies available to unsecured creditors seeking payment from

7

debtors who evade collection. (See *Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 817 ["The purpose of the UVTA is to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt"].) Originally enacted as the "Uniform Fraudulent Transfer Act" in 1986, its retitling in 2016 reflected the Legislature's intent to "reduce misconceptions that the law requires proof of fraudulent intent." (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 161 (2015-2016 Reg. Sess.) p. 2.) Little else changed in substance. (See § 3439.14, subd. (d) ["The provisions of this chapter, insofar as they are substantially the same as the provisions of this chapter in effect on December 31, 2015, shall be construed as restatements and continuations, and not as new enactments"].)

The UVTA provides a variety of tools to achieve its ends. For example, the court may void a transfer of assets, attach assets, or employ equitable remedies such as injunctive relief or receivership. (§ 3439.07.) A creditor may also supplement the UVTA's remedies with any others available at law or in equity. (§ 3439.12 ["Unless displaced by the provisions of this chapter, the principles of law and equity, . . . supplement its provisions"].) The UVTA enumerates eleven characteristics or "'badges of fraud'" to help the trier of fact discern when a debtor has crossed the often blurry line between legitimate asset protection planning and voidable maneuvering. (*PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 174 (*PGA West*); § 3439.04, subd. (b).)

### C. Nagel Stated a Cause of Action for Fraudulent Transfer Under the Plain Language of the UVTA

Nagel alleges respondents' asset protection efforts bear the hallmarks of a fraudulent transfer. We are, however, confronted

with a narrower and more foundational question – did a "transfer" under the UVTA occur in the first place?  Specifically, do Nagel's allegations give rise to a cause of action for fraudulent transfer if Lawson and Westen, in essence, transferred assets to themselves?  We look to the UVTA's text for our answer.  (See *Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1119 [a statute's words "'"'generally provide the most reliable indicator of legislative intent"'"']; *Estate of Griswold* (2001) 25 Cal.4th 904, 910 ["In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute"].)  "'"'We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation]."'"'  (*Ceja*, at p. 1119, quoting *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529-530.)  "'"'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs."'"'  (*Ceja*, at p. 1119 quoting *In re Ethan C.* (2012) 54 Cal.4th 610, 627.)

"'In order for a fraudulent transfer to occur, among other things, there must be a *transfer* of an *asset* as defined in the UFTA.'"  (*PGA West*, *supra,* 14 Cal.App.5th at p. 169, quoting *Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 841.)  "'Transfer' under the [UVTA] has a broad meaning." (*Sturm v. Moyer* (2019) 32 Cal.App.5th 299, 308.)  The term is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." (§ 3439.01, subd. (m).)  The law defines "'[a]sset'" broadly as well.  An asset includes the "property of a debtor" with

9

just three exceptions: (1) property encumbered by a valid lien; (2) property exempt under nonbankruptcy law; and (3) property held in tenancy in the entireties "to the extent it is not subject to process by a creditor holding a claim against only one tenant." (§ 3439.01, subd. (a).) The UVTA uses the term "transferee" throughout its text but does not define it. (E.g., §§ 3439.06 to 3439.08.)

The first amended complaint alleges Lawson and Westen moved their personal belongings and financial assets, including a portion of the Brentwood sale proceeds, to a foreign jurisdiction. It further alleges they used the Brentwood sale proceeds to buy and improve foreign real estate for the purpose of shrinking the corpus of assets available for collection. We hold that under the UVTA, physically relocating personal property and transmitting or transporting sale proceeds out of state, then transmuting them into a different legal form, may constitute a direct or indirect mode of parting with assets or one's interest in those assets. As such, Nagel adequately alleged a "transfer" under the UVTA. In this posture the trier of fact must now determine if grantor's title is but, "a mere cloak under which is hidden the hideous skeleton of deceit . . . ."[6]

The issue as framed is a matter of first impression. (See *Renda v. Nevarez* (2014) 223 Cal.App.4th 1231, 1236, italics omitted ["Although these cases suggest the UFTA does not authorize entry of a money judgment against a debtor under any circumstances, we need not (and do not) decide that broad issue to resolve this appeal"].) We recognize most authorities concern transactions in which a third party received the debtor's assets.

---

[6] *Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 936.

10

We also note the term "'third party'" embedded in high court dicta defining "fraudulent conveyance." (See *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 648, quoting *Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13 ["'A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim'"].) The existing landscape of authorities left the trial court few clear reference points. However, this did not warrant grafting a third-party transferee requirement onto a broad but plainly worded statute.

Reading the definition of "transfer" in context with other UVTA provisions leads us to the same conclusion. Section 3439.04(b) anticipates imaginative debtors will employ an array of tactics to evade payment obligations. For example, the trier of fact may look to whether "the transfer or obligation was to an insider"; "the debtor retained possession or control of the property transferred after the transfer"; or "the debtor removed or concealed assets." These badges of fraud indicate one's liability under the UVTA is not contingent upon recruiting conspirators. It may include situations in which the debtor "parts" with property without alienating ownership rights or possession. Further, the UVTA does not limit its enforcement measures to third parties. (See § 3439.07, subd. (a)(3)(C) [creditor may obtain avoidance, injunctive relief, receivership, or "[a]ny other relief the circumstances may require"].)

### D. Limiting the UVTA to Third-Party Transfers Would Neither Conform to Legislative Intent nor Serve the Public's Interest

Resolving this appeal does not require us to look beyond the UVTA's text. (See *In re Ethan C.* (2012) 54 Cal.4th 610, 627 [court turns to extrinsic aids ""'[o]nly when the statute's language

11

is ambiguous or susceptible of more than one reasonable interpretation"'"].)  If it did, however, we would again arrive at the same result.[7]

"[A] creditor-debtor relationship can alter an owner's power over the property owned." (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 161 (2015-2016 Reg. Sess.) p. 2.)  "Unsecured creditor-debtor relationships necessarily raise questions as to a creditor's rights and remedies when the debtor manipulates property to defeat the creditor's potential interest in that property." (*Ibid.*)  It is not surprising the UVTA defines the term "asset" not from the debtor's perspective, but from that of a creditor with a potential interest in any property that could satisfy the underlying debt.  (See, e.g., *Yaesu Electronics Corp. v. Tamura*, *supra*, 28 Cal.App.4th at p. 13 ["a conveyance will not be considered fraudulent if the debtor merely transfers property which is otherwise exempt from liability for debts"]; *Tassone v. Tovar* (1994) 28 Cal.App.4th 765, 769 ["The February 1986 conveyance of the property by grant deed to appellant . . . did not affect respondents' rights.  Respondents were left in the same position as they were in before the conveyance: with no claim to the property."].)

Nagel alleges Lawson and Westen transferred property during the closing stages of arbitration that otherwise would have been available to satisfy her judgment.  Her interest had already arisen at the time of transfer.  Creating a bright line

---

[7] Nagel requests judicial notice of the UFTA and UVTA as approved by the NCCUSL in 1984 and 2016, respectively, in addition to legislative history materials for Senate Bills 2150 (1985-1986 Reg. Sess.) and 161 (2015-2016 Reg. Sess.).  We grant appellants' request. (Evid. Code, §§ 452, subds. (c) & (h), 453.)

"third-party transferee" requirement would allow debtors to unilaterally extinguish this interest, and, it follows, their UVTA liability, by simply manipulating an asset's form or location without vesting legal title or ownership in a third party. This result would contravene the UVTA's stated purpose: "to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt." (*Chen v. Berenjian*, *supra*, 33 Cal.App.5th at p. 817.) Statutes such as the Fair Debt Collections Practices Act (28 U.S.C. § 3001 et seq.) and Rosenthal Fair Debt Collection Practices Act (§ 1788 et seq.) focus on protecting debtors' rights and restraining creditors' collection practices. The UVTA does not. It focuses on *creditors*' rights and restraining debtors' evasive maneuvering. We decline to interpret the statute in a way that not only subordinates creditors' interests to debtors, but encourages debtors to devise new and more creative ways to circumvent valid obligations.

*PGA West*, *supra*, 14 Cal.App.5th 156 presented the Fourth District with a situation similar in concept (if not fact) to ours. Debtor recorded a deed of trust on his condominium. He named an unincorporated sham entity as the deed's beneficiary and then foreclosed to insulate his equity from a creditor's claims. Many years later the creditor tried to avoid the UVTA's seven-year period of repose by arguing a transfer did not occur until debtor incorporated the sham entity. Prior to then, the creditor argued, debtor had effectively given a property interest to himself. The Fourth District declined to adopt the creditor's rigid characterization of the term "transfer" by focusing on the legal distinctions between the debtor and the purported transferee. The debtor's intent to insulate his assets and defraud creditors brought the transaction within the UVTA. (See *id*. at p. 174

13

["although Mork never incurred a real obligation to Hulven under the deed of trust and note, and Hulven apparently never really existed as a corporate entity, Mork's fraudulent attempt to transfer the equity in his condominium to Hulven to insulate that asset from potential creditors constitutes a 'transfer' as defined in section 3439.01, subdivision (m)"].) We agree. The creditor's interests should drive the court's interpretation of the term "transfer" rather than the form of debtors' asset manipulations.

*E. Nagel's Common Law Cause of Action for Fraudulent Transfer*

Nagel styles her first cause of action as one for fraudulent transfer under both the UVTA and common law. The trial court remarked in its ruling that "[p]recisely what the Plaintiff claims to be the elements of a common law cause, and how such would be reflected in jury instruction, remains unclear." Perhaps Nagel's allegations do give rise to such a claim.[8] We decline to decide the issue where, as here, the opening brief does not address this part of the trial court's ruling. (*Tisher v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361, citing *Balboa Ins. Co. v. Aguirre* (1983) 149 Cal.App.3d 1002, 1010 ["plaintiffs' failure to raise an issue in their opening brief waives the issue on appeal"].)

CONCLUSION

We reverse the order dismissing Nagel's causes of action for fraudulent transfer under the UVTA, for conspiracy, and for aiding and abetting. We affirm the order to the extent it

---

[8] See *Berger v. Varum* (2019) 35 Cal.App.5th 1013, 1019 ("Traditionally, creditors could bring fraudulent transfer cases under common law. [Citations.] Because the UVTA is not intended to replace such common law but merely supplement it, we conclude Berger may bring such a claim under common law.").

dismisses Nagel's common law cause of action for fraudulent transfer.  Appellants shall recover their costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Valle Makoff, Jeffrey B. Valle and Jennifer Laser, for Plaintiffs and Appellants.

The Law Office of John Derrick, John Derrick, for Defendants and Respondents, Westen Family Group, LLC, Derek Westen, Peter K. Westen & Westen Family Trust.

Schley Look Guthrie & Locker, Ian M. Guthrie, for Defendants and Respondents Tracy A. Westen, Linda Lawson, and the Westen-Lawson Trust.

Rogers, Sheffield & Campbell, Scott B. Campbell and Nathan C. Rogers, for Defendant and Respondent Westen Family Group, LLC, Derek Westen, and Westen Family Trust